## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| KEIRON KENNETH HOLMES, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV422-227 |
| | ) | |
| SGT. BAXTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* prisoner Keiron Kenneth Holmes, Sr. has, after several extensions, filed the forms required to proceed *in forma pauperis*. *See* doc. 10 (extending deadline); *see also* docs. 16, 17 & 18. The Court, therefore, proceeds to screen Holmes' Complaint. *See* 28 U.S.C. § 1915A. Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Holmes is proceeding

1

*pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed.   *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Holmes' Complaint does not include a general set of factual allegations.   Instead, it begins with disjointed conclusory allegations related to unspecified claims.[1]  *See* doc. 1 at 5.  It then follows with a series of numbered paragraphs. *See id.* at 6-13.  The Court has construed the totality of Holmes' allegations liberally in evaluating the claims discussed below.  He seeks various forms of relief, including, what the Court construes as requests for injunctive relief, *i.e.,* "to see a psychiatrist for the mental damage that was cause[d] by defendants," "a[n] undercover investigation done here at Chatham County Sheriff[']s Office," and, generally, "[m]onetary damages, punitive damages, nominal

---

[1]  Holmes has identified various legal theories in his Complaint.  *See, e.g.,* doc. 1 at 14 (characterizing claims as "for routinely failing-to-protect, for condition of confinement [sic], for excessive force, for cruel and unusual punishment, denial of access to courts, false imprisonment, [and] depriving [him] of due process.").  Despite the legal theories identified, the liberal construction afforded to *pro se* pleadings "means that federal courts must sometimes look beyond the labels . . . and focus on the content and substance of the allegations."  *Royal v. CEC Ent., Inc.*, 2019 WL 2252151, at *2 (S.D. Ga. May 24, 2019) (internal quotation marks and citations omitted)).

damages, injunctive relief, injunction damages[,] . . . [and d]eclaratory relief." *Id.* at 14.

## I.    Letters to the Court

Holmes has sent numerous letters to the Court. *See* docs. 5, 11, 12, 13 & 14. Some of them appear to contain additional allegations concerning claims discussed below. *See, e.g.,* docs. 5 & 14. Others inform the Court of logistical difficulties he has encountered in complying with its orders. *See, e.g.,* doc. 11. Regardless of their substance, letters to the Court are not appropriate. *See In re Unsolicited Letters to Federal Judges*, 120 F. Supp. 2d 1073, 1074 (S.D. Ga. 2000) ("[I]f a litigant seeks judicial action of any sort . . ., it must be contained within a *motion* . . . [, i]t cannot be requested in a personal *letter* to a judge."). Motions also get placed on the Court's "pending motions" list, while letters do not (hence, they might be inadvertently ignored). The Federal Rules of Civil Procedure also require that requests that the Court take action be made "by motion." Fed. R. Civ. P. 7(b)(1). Finally, letters do not comply with the various other procedural requirements imposed by the Federal Rules. The Court will take no further action on any information contained in any of the letters Holmes has sent. He is advised that no action will be

taken on any further letters he sends.  If he seeks any action from the Court he must file a motion.  As discussed below, Holmes will have an opportunity to submit an amended complaint which may include any additional allegations submitted in his letters.

## II.    Appointed Counsel

Holmes' Complaint includes a cursory request for "a court appointed attorney to help [him] with [his] case." Doc. 1 at 14.  Holmes, however, has no constitutional right to counsel in this civil case. *Wright v. Langford*, 562 F. App'x 769, 777 (11th Cir. 2014) (citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)).  "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." *Id.* (citing *Bass*, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987), and *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)).  "[T]his Court has

repeatedly found that prisoners do not receive special consideration [for appointed counsel] notwithstanding the challenges of litigation in a case while incarcerated." *Holzclaw v. Milton*, 2019 WL 1474398, at * 1 (S.D. Ga. Apr. 3, 2019) (internal quotation marks and citation omitted); *see also Bell v. Lamb*, 2021 WL 1954739, at * 3 (S.D. Ga. Mar. 30, 2021).  General lack of education, including legal education, is also not a sufficient basis to require appointment of counsel.  *See, e.g., Brown v. Wilcher*, 2021 WL 411508, at *1 (S.D. Ga. Feb. 5, 2021).

The Eleventh Circuit has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." *McDaniels v. Lee*, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993)).  As discussed below, Holmes' Complaint appears to adequately present his position. There is, therefore, no indication of any "exceptional circumstance" that

warrants appointment of counsel.  *Fowler*, 899 F.2d at 1096.  His request for court-appointed counsel is, therefore, **DENIED**.

### III.   Request for "Investigation"

Holmes' claims seeking to initiate "investigation" of the Chatham County Sheriff's Department fail to state a claim upon which relief may be granted.  Private citizens are simply not permitted to initiate criminal actions in federal court.  *See, e.g., Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution." (citing *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.")));  *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution.").  The Court is also without authority to order the United States Attorney, or indeed any other law enforcement officer, to initiate a prosecution.  *See, e.g., Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2nd Cir. 1973) (citations omitted) ("federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the insistence of a private person, discretionary decisions of federal prosecuting

authorities not to prosecute persons regarding whom a complaint of criminal conduct is made[,] . . . even in cases . . .where . . . serious questions are raised as to the protection of the civil rights and physical security of a definable class of victims of crime and as to the fair administration of the criminal justice system."). Such orders would violate the Constitution's separation of powers between the Executive and Judicial Branches. *See id.* at 379-80 (quotes and cite omitted) (the United States Attorney, although a member of the bar and an officer of the court, "is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case."). Holmes' request for an "undercover investigation" should, therefore, be **DISMISSED**. *See* doc. 1 at 14.

## IV.   Excessive Force Claims

Several of Holmes' allegations implicate a claim that he was subjected to excessive force during his "booking" into Chatham County Detention Center. *See* doc. 1 at 6. He alleges that defendants Baxter, Willis, Fisher, and Gardner were all involved in an incident in which he was struck and subjected to physical duress (*i.e.*, an officer "force[d] his

knee into [Holmes'] back") while he was "non-resistant" and in restraints. *Id.* He alleges that the force deployed "cause[d him] to have a heart[ ]attack." *Id.* It is well-settled that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks, alteration, and citation omitted); *see also Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019). "In considering an Eighth Amendment excessive force claim, [the court] must consider both a subjective and an objective component: (1) whether the officials acted with a sufficiently culpable state of mind, and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006) (internal quotation marks, alterations, and citation omitted). Holmes' allegations of excessive force are sufficient, at least for screening purposes, for service upon defendants Baxter, Willis, Fisher, and Gardner.

## V.   Access to Counsel

Holmes' allegations concerning interference with his access to counsel and the courts are schematic, at best. He alleges, "the supervior

[sic] that was responsible for letting [him] go to court and letting [him] talk to [his] attorney[ ] fail to do so . . . ." Doc. 1 at 6.  He also alleges that "[o]n an unspecified date and time [his] public defender came to speak with [him] and was told that he could not . . . ." *Id.*

Courts have held that "[u]nder the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Philadelphia*, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)).  "With respect to restrictions on attorney contact with clients, the Supreme Court has held that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys and that prison regulations and practices that unjustifiably obstruct the availability of professional representation are invalid." *Petlock v. Nadrowski*, 2016 WL 7173781, at *9 (D.N.J. Dec. 8, 2016) (internal quotation marks and alterations omitted) (quoting *Benjamin*, 264 F.3d at 184).

Despite the conceptual possibility of a Sixth Amendment claim, the Court is skeptical that Holmes' allegations are sufficient.  The Court has been unable to identify any case recognizing that a single denial of a

meeting between a detainee and his criminal counsel was "unreasonable." That skepticism notwithstanding, the Court should abstain from hearing Holmes' claim regardless of its merit. Courts have recognized that abstention pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), which precludes this Court from interfering in an on-going state prosecution, requires dismissal of such claims to the extent that they seek injunctive relief. *See, e.g., Waite v. Multnomah Cnty. Sheriff's Dept.*, 2010 WL 711225, at *2 (D. Or. Feb. 24, 2010). Moreover, such claims are barred, to the extent that they seek monetary damages, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), because "judgment in Plaintiff's favor would necessarily imply the invalidity of [his] ongoing state criminal proceedings. . . ." *Id.* Accordingly, Holmes' Sixth Amendment claim should be **DISMISSED**.

## VI. Threats

Holmes alleges that several officers threatened him or were otherwise verbally abusive. *See* doc. 1 at 7. Specifically, he alleges that "a[n] officer by the name of Foster came to [his] cell . . . and open[ed] the door . . . to get breakfast trays and said [']I almost stab [sic] the s[***] out you but I forgot the camera's watching.[']" *Id.* He also alleges that

"Officer Eillis took her badge off and threw it aggressively on the floor yelling fu*k [sic] that badge you gone get your a[**] whoop." *Id.* at 8.  He alleges that "Officer Washington became violent putting [his] life in danger boxing her hand yelling [she] will piss on [his] grandmom grave, stating [she] will go in the bathroom and piss and s[***] in a cup then come throw it on [Holmes]." *Id.* at 9. During the same incident the officer expressed her hope that Holmes would be assaulted by other inmates. *Id.*

As this Court has explained, "verbal abuse, without more, does not state a claim under § 1983." *Reid v. Wilkes*, 2018 WL 1569860, at *4 (S.D. Ga. Mar. 6, 2018); *see also Hernandez v. Fla. Dept. of Corrs.*, 281 F. App'x 862, 866 (11th Cir. 2008) (". . . Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim."). "Though [the language Holmes alleges] was unprofessional, offensive, and arguably detestable, it is a distant cry from violating a federally protected right." *Lang v. Aguilar*, 2020 WL 9848839, at *1 (S.D. Ga. Dec. 22, 2020).  Accordingly,

any claim arising from alleged verbal threats or abuse should be **DISMISSED**.

## VII.  Failure to Protect Claims

Much of Huston's Complaint concerns allegations that prison staff failed to protect him; frequently characterizing the events alleged as "putting [his] life in danger." *See, e.g.,* doc. 1 at 8-9.  While those conclusory allegations of "danger" are not sufficient to state a claim, *see, e.g., Iqbal*, 556 U.S. at 678, he does make several specific allegations that implicate failure-to-protect claims.  First, he discusses an incident involving an inmate who assaulted a guard.  *See* doc. 1 at 7.  He also alleges general violation of "jail policies" related to officers' treatment of other inmates.  *Id.* at 8 (objecting that officers allowed "a violent inmate who threw papers on the floor, yelling vulgar language[,] threatening to do harm to other inmate [sic] [to] stay out [of] his cell while opening [Holmes'] cell door for recreation time.").  He alleges that he witnessed an altercation between an officer and another inmate.  *Id.* at 9.  Finally, he objects, in general, to security precautions.  *Id.* at 10 (alleging that

officials "continuously allow violent convicted state prisoners to have access to knives . . .").

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotes and cites omitted).[2]  "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  Merely negligent failure to protect an inmate from attack does not justify liability under § 1983. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).  "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  Moreover, the threat must rise to the level of "a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown*, 894 F.2d at 1537 (internal

---

[2] Holmes alleges that he is a pretrial detainee. *See* doc. 1 at 8.  As a pretrial detainee, his failure-to-protect claims are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *See, e.g. Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).  "However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Id.* (citations omitted).

quotation marks and citation omitted).  The general dangerousness of other inmates is not sufficient to support a failure-to-protect claim.  *See, e.g., Goodson v. Benton*, 2020 WL 975089, at *2 (S.D. Ga. Jan. 16, 2020) (citations omitted) ("Prisons are dangerous places because they are filled with people society has already deemed too dangers to live amongst law abiding persons.  Prisoners will always be at some risk of harm simply by being surrounded by these people.  [Cit.]  In order to trigger a failure-to-protect claim, a plaintiff must allege that the threat rose above the background danger.").

None of Holmes' allegations is sufficient to identify a "strong likelihood" of harm, rather than the "mere possibility."  First, "the mere fact that pretrial detainees and convicted . . . felons were housed together . . . does not provide a sufficient basis from which to infer deliberate indifference." *Lavite v. Hertz*, 2013 WL 2458525, at *3 (S.D. Ill. June 6, 2013) (citing, *inter alia.*, *Shaffer v. Reno*, 66 F.3d 328 (7th Cir. 1995)).  Second, none of his allegations implicate a threat to him, personally, as opposed to what he contends is a general lack of security.  Such generalized allegations are not sufficient.  *See, e.g., Gibson v. Thomas*, 2022 WL 562799, at *3 (S.D. Ga. Jan. 27, 2022) (citing *Carter v. Galloway*,

14

352 F.3d 1346, 1349-50 (11th Cir. 2003); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006)) ("[W]hile Plaintiff complains about the lack of security and supervision, in the absence of a particularized threat of an attack, there is no failure to protect claim."). At most Holmes alleges that security at Chatham County Detention Center is negligent.  His failure-to-protect claims should, therefore be **DISMISSED**.

## VIII. Jail Policies and Grievances

Holmes' allegations invoke violations of jail policies several times. *See* doc. 1 at 8, 10.  He also complains that jail staff "didn't answer the grievance [he] wrote . . . ."  *Id.* at 11.  However, "[a] violation of departmental rules or policies, standing alone, does not infringe upon an inmate's constitutional rights."  *Cook-Bey v. Jackson*, 2019 WL 3213718, at *6 (M.D. Ala. June 12, 2019) (collecting cases); *see also Malone v. Bailey*, 2020 WL 8172706, at *2 (S.D. Ga. Dec. 22, 2020) ("[V]iolation of prison policies or procedures, standing alone, does not infringe upon an inmate's constitutional rights," and collecting cases).  Similarly, "failure to follow internal grievance procedures does not violate a constitutional right that would support a § 1983 claim."  *Hammock v. Jarriel*, 2007 WL 1810442, at *2 (S.D. Ga. June 21, 2007); *see also, e.g., Rushing v.*

*Williamson*, 2022 WL 17820389, at *2 (M.D. Fla. Dec. 20, 2022) ("A prison official's failure to process a grievance is not actionable under Section 1983."). Accordingly, any claim Holmes asserts arising out of policy violations, including failure to process grievances, should be **DISMISSED**.

## IX. Conditions-of-Confinement

Holmes complains about several of the conditions of his confinement. He complains that inmates are confined to their cells without access to showers for up to one week. Doc. 1 at 12. He complains that "the mental health dorm" doesn't have access to tablet computers. *Id.* He complains that lunch is not served in his dorm "until hours after the rest of the jail." *Id.* He alleges that he was placed in "a cell that had urine on floor and bowes [sic] and trash on table and floor and black mole [sic] in [his] cubie container." *Id.* Finally, he complains that water leaks through the window in his cell. *Id.*

The Eighth Amendment's prohibition on "cruel and unusual punishment" generally applies in circumstances where individuals are

subject to unconstitutional conditions of confinement.[3]   *See, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976).   Claims that prison conditions violate the Eighth Amendment, whether immediately or by creating an unreasonable risk, require the allegation of both an objectively serious condition and a defendant's deliberate indifference to that condition.   *See, e.g., Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (claim based on risk of future harm requires objective showing of "substantial risk of serious harm," "the defendants' deliberate indifference to that risk," and causation); *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (discussing "two-prong showing" required for Eighth Amendment claims challenging conditions of confinement); *Ellis v. Pierce Cnty, Ga.*, 415 F. App'x 215, 217 (11th Cir. 2011) ("A pretrial detainee in a conditions-of-confinement suit must satisfy both an objective and a subjective inquiry into the conduct of the defendant prison officials.").   "[O]nly those deprivations denying the minimal civilized measure of life's necessities, [cit.] are sufficiently grave to form the basis of an Eighth Amendment

---

[3] "In evaluating the conditions of confinement for pretrial detainees, we look to the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, though the minimum standards allowed by the due process clause are the same as those allowed by the Eighth Amendment for convicted persons." *Jacobs v. Georgia*, 820 F. App'x 882, 887 (11th Cir. 2020) (internal quotes, citations, and alterations omitted).

violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citations omitted).

"[T]he Constitution does not mandate comfortable prisons . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  The conditions that Holmes complains of do not rise to the level of severe deprivations which would offend the Constitution.   Denial of access to showers and lockdowns for one-week periods does not violate the Constitution.  *See, e.g, Lee v. Cook*, 2021 WL 3055403, at *5 (D. Conn. July 20, 2021) (collecting cases); *Thomas v. City of Philadelphia*, 2021 WL 1614411, at *6 (E.D. Pa. Apr. 23, 2021) (citing, *inter alia.*, *Dixon v. Clague*, 2020 WL 6389855, at *2 (C.D. Ill. Oct. 30, 2020); *Barndt v. Wenerowicz*, 2016 WL 6612441, at *4 (E.D. Pa. Nov. 8, 2016), *aff'd*, 698 F. App'x 673 (3d Cir. 2017)).  Court have also recognized that prisoners "certainly do not have [a constitutional right] to a computer." *Lehn v. Hartwig*, 13 F. App'x 389, 392 (7th Cir. 2001).  Delays in meal service, even when they result in the food becoming cold, do not violate the Constitution.  *See, e.g., Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992) (claim that cold food violated constitutional rights was "frivolous.").  Holmes does not allege that the delay in meal service results in any detriment to the food served.  *See* doc.

1 at 12.  Finally, being "housed in a cell with black mold, broken windows, [and] water leaks . . ." fails to allege a constitutional violation.  *Bush v. Monroe*, 2018 WL 4648732, at *3 (E.D. Tex. July 30, 2018); *see also, e.g., Lane v. Francis*, 2019 WL 3025354, at *5 (S.D. W. Va. June 14, 2019).  All of those claims should, therefore, be **DISMISSED**.

Holmes' claim that he was confined in a cell containing excrement, while not sufficient to state a claim, might be amended.  Confinement in a cell exposing an inmate to "dried urine, blood, and feces," for limited periods does not violate the Constitution.  *Anderson v. Chapman*, 2013 WL 4495827, at *2 (M.D. Ga. Aug. 20, 2013); *see also, id.* at *5 (recognizing that the conditions "were deeply unpleasant, [but] none . . . appears to have been so grave that it violates contemporary standards of decency . . . (internal quotation marks and citation omitted)).  Prolonged or egregious exposure to unsanitary conditions can, however.  *See, e.g., Taylor v. Riojas*, ___ U.S. ___, 141 S. Ct. 52, 53-54 (2020).  Holmes alleges that he was "in a cell that had urine on floor and bowes [sic] and trash on table and floor . . ." "on 9-22-2022."  Doc. 1 at 12; *see also id.* at 13 (alleging he was "put . . . in a cell that had urine on floor and doo doo on wall and trash on table and floor . . . on 09-22-2022.").  His allegation does not,

therefore, indicate the duration of his confinement or the extent of the contamination.  As discussed below, he will have an opportunity to clarify his allegations.

## X.    Retaliation

Holmes alleges that "Lt. Murphy retaliated after [Holmes] telling him multiple officers put [Holmes'] life in danger and tried to killed [sic] [him]."  Doc. 1 at 11.  The First Amendment forbids prison officials from retaliating against prisoners for exercising their First Amendment rights.  *Thomas v. Evans*, 880 F.2d 1235, 1241 (11th Cir. 1989).  "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right."  *Id.* at 1242.  Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising [his First Amendment rights]."  *Id.*  "To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal connection between the retaliatory action . . .  and the protected speech."  *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (internal

quotations and alterations omitted); *see also Smith v. Fla. Dep't of Corr.,* 713 F.3d 1059, 1063 (11th Cir. 2013) (identifying elements for a retaliation claim).

Courts have expressed skepticism that verbal complaints, as opposed to formally filed grievances, are constitutionally protected speech. *See Daker v. Head*, 2019 WL 11005452, at *19 (S.D. Ga. Dec. 20, 2019) ("[V]erbal complaints by inmates, without more, are likely not constitutionally-protected speech."), *adopted in relevant part by* 2020 WL 5269802, at *5 (S.D. Ga. Sept. 4, 2020); *Hoever v. Caper*, 2014 WL 6674490, at *2 (N.D. Fla. Nov. 25, 2014) (identifying "ample reasons which support limiting 'protected speech' of a prisoner to the contours of filing a grievance."); *Martin v. Hurley*, 2014 WL 7157336, at *2 (E.D. Mo. Dec. 15, 2014) ("Prisoners have no constitutionally protected right to confront staff and discuss issues with them . . . ."). Holmes alleges only that he told Murphy about the threats. *See* doc. 1 at 11. It is not clear, therefore, that Holmes has alleged any protected conduct.

Even assuming that Holmes' allegations of his verbal complaints are sufficient, and his allegation that Murphy "decided with classification

to put [him] in the mental health dorm," alleges adverse action,[4] he alleges no fact which suggests a causal connection between his complaint and classification. "[A] plaintiff is required to do more than make 'general attacks' on a defendant's motivations and must articulate 'affirmative evidence' of retaliation to prove the requisite motive." *Jackson v. Assistant Warden*, 2018 WL 7858414, at * 2 (11th Cir. Dec. 6, 2018) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). Holmes' allegation, discussed below, that he is denied "prescribed mental health medication," *see* doc. 1 at 5, suggests that there may be an explanation for his assignment to a "mental health dorm," other than retaliation. Regardless, the lack of any causation allegations is fatal to his claim. However, his retaliation claim might be amendable.

## XI.   Indifference to Medical Needs

Holmes' allegation that he has been denied "prescribed mental health medication," suggests that he has been denied adequate medical care. To offend the Eighth Amendment,[5] a government official must

---

[4] Holmes alleges that the "mental health dorm" to which he was assigned is subject to more restrictive conditions than generally apply to other inmates. *See* doc. 1 at 11-12.

[5] "A government officials' treatment of pretrial detainees is governed by the Due Process Clause of the Fourteenth Amendment, while treatment of convicted prisoners is governed by the Eighth Amendment. [Cit.] However, because the legal standards

display "deliberate indifference to the serious medical needs of prisoners

. . ." *Estelle*, 429 U.S. at 104.  This requires that (1) the prisoner suffered

a sufficiently serious medical need; (2) to which the defendants were

deliberately indifferent; (3) resulting in an injury.  *Goebert v. Lee Cty.*,

510 F.3d 1312, 1326 (11th Cir. 2007).  Whether a serious medical need

existed is an objective standard.  *Milton v. Turner*, 445 F. App'x 159, 161-

62 (11th Cir. 2011).  However, whether defendants were deliberately

indifferent is subjective and each defendant is "judged separately and on

the basis of what that person knows."  *Burnette v. Taylor*, 533 F.3d 1325,

1331 (11th Cir. 2008).

Holmes' allegations are not sufficient to allege any particular

defendant's deliberate indifference.  Even assuming that Holmes' vague

allegation concerning "prescribed mental health medication" is sufficient

to allege a serious medical need, *cf. Aldridge v. Montgomery*, 753 F.2d

970, 972 (11th Cir. 1985) (interference with prescribed treatment

supports deliberate indifference), he does not allege that any particular

defendant was aware of that prescription and refused to provide it, *see,*

---

for provision of medical care are the same under both amendments, Eighth and
Fourteenth Amendment cases can be used interchangeably in the deliberate-
indifference analysis." *Hranek v Cosol. City of Jacksonville*, 2022 WL 3221907, at *2
(11th Cir. Aug. 10, 2022)

*e.g., Patrie v. Stallkamp*, 2020 WL 13329000, at *3 (M.D. Fla. Nov. 24, 2020) (finding plaintiff failed to state a deliberate indifference claim based on interference with prescribed treatment where he failed to adequately allege subjective prong).  Holmes is entitled to an opportunity to amend his claim to clarify his allegation of deliberate indifference to his medical needs.

## XII.  Insufficient Claims

Several of Holmes' allegations implicate possible claims but fail to allege sufficient facts to permit substantive analysis.  First, he alleges that a "DEFCS manager caseworker" was denied an opportunity to meet with him.  *See* doc. 1 at 7.  The Court presumes that "DEFCS" refers, albeit inaccurately, to the Georgia Division of Family and Children Services.  *See id.* at 5 (alleging he "loss rights to [his] son").  Courts have recognized that prisoners have no right to participate in at least some domestic-relations proceedings.  *See Ball v. Hartman*, 396 F. App'x 823, 825 (3d Cir. 2010).  It is also not clear whether the visit in question "related to anything as fundamental as [plaintiff's] parental rights."  *Id.* To the extent that Holmes contends that the interview with an unspecified employee from an ambiguous agency at "a[n] unspecified date

and time," implicated his constitutional rights, he must allege more factual detail. *Cf. Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks and citations omitted)).

Holmes also alleges that he was subjected to strip searches when he was moving between units. *See* doc. 1 at 9. Strip searches of inmates implicate Fourth Amendment protections. *See, e.g., Moton v. Walker*, 545 F. App'x 856, 858-59 (11th Cir. 2013). However, "neither the United States Supreme Court nor the Eleventh Circuit Court of Appeals appears to have addressed the reasonableness of routine visual body cavity searches conducted when the inmates have not had contact with the outside world." *Jackson v. Dozier*, 2019 WL 6709555, at *7 (M.D. Ga. Oct. 17, 2019). In order to evaluate whether a particular search violates the Fourth Amendment, the Court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Powell v. Barrett*, 541 F.3d 1298, 1305 (11th Cir. 2008); *see also Simmons v. Williams*, 2017 WL 3427988, at *16-*18 (S.D. Ga. Aug. 9, 2017) (analyzing factors on

defendants' Motion to Dismiss).  Holmes' allegations are not sufficiently detailed to permit that analysis.

Although his vague allegations concerning denial of access to the "DEFCS manager caseworker" and strip searches do not sufficiently allege any claim, Holmes will have an opportunity to clarify those claims in the amendment discussed below.

### XIII. Filing Fee

Finally, the Court must assess Holmes' filing fee.  *See* 28 U.S.C. § 1915(b).  Plaintiff's prisoner trust fund account statement reflects $18.33 in average monthly deposits.  Doc. 17 at 1; *see also* doc. 18 at 1. Based upon his furnished information, he owes an initial partial filing fee of $3.67.  *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula).  His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.  In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in

this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.[6]

## XIV. Conclusion

In summary, Holmes' request for appointed counsel is **DENIED**. Holmes' claim that that Baxter,[7] Willis, Fisher, and Gardner subjected him to excessive force are approved for service on those defendants.  None of his remaining allegations are sufficient to state any claim.  However, "when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015).  Holmes' request for an "investigation," and claims arising from denial of access to his counsel, threats, failure to

---

[6]  The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required.  In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

[7]  Defendant Baxter's name is spelled inconsistently in Holmes' Complaint.  It is spelled "Baxter" in the caption, *see* doc. 1 at 1, and in the list of defendants, *id.* at 4. It is spelled "Baxster" in the factual allegations.  *See id.* at 6.  The Court assumes "Baxster" is a mistake.

protect, jail policies and grievance procedures, and the conditions of his confinement, except his confinement in an unsanitary cell, do not appear amendable and should be **DISMISSED**.[8]  His claims arising from his confinement in a cell containing alleged excrement, the alleged retaliation, deliberate indifference to his medical needs, interference with his parental rights, and strip searches must be amended.  Holmes is **DIRECTED** to submit an Amended Complaint addressing the deficiencies discussed above no later than January 11, 2023.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

---

[8] Despite no apparent basis for a viable amendment of those claims, the fourteen-day objection period, discussed below, affords Holmes one final opportunity to address the deficiencies identified above.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Since the Court approves for service Holmes' excessive force claims against defendants Baxter, Willis, Gardner, and Fisher, a copy of Plaintiff's Complaint, doc. 1, and a copy of this Order and Report and Recommendation shall be served upon Defendants Baxter, Willis, Gardner, and Fisher by the United States Marshal without prepayment of cost. The Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff. The Court also provides the following instructions to the parties that will apply to the remainder of this action.

## INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal. Fed. R. Civ. P.

4(c)(3).  In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons.  Fed. R. Civ. P. 4(d); Local R. 4.5.  A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d).  Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver.  Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a)(2).  Defendants are further advised the Court's standard 140-day discovery period will commence upon the filing of the last answer.  Local R. 26.1.  Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil

Procedure 30.  As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any.  Defendants shall present such questions to the witness in order and word-for-word during the deposition.  Fed. R. Civ. P. 30(c).  Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

<u>**INSTRUCTIONS TO PLAINTIFF**</u>

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during the pendency of this action.  Local R. 11.1.  Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney).  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel.  Fed. R. Civ. P. 5.  "Every pleading shall

contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from a Defendant, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 to Fed. R. Civ. P. 37. The discovery period in this case will expire 140 days after the filing of the last answer. Local R. 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Id. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a **party** to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are **not named** as a defendant. Interrogatories are

not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for failure to prosecute.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant.   Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order.   A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## <u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u>

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss

shall file and serve his response to the motion within 14 days of its service.  Failure to respond shall indicate that there is no opposition to a motion.  Local R. 7.5.  Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion.  Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion.  Local R. 7.5, 56.1.  The failure to respond to such a motion shall indicate that there is no opposition to the motion.  Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  If a Defendant files a motion for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.  That burden cannot be met by reliance on the conclusory allegations contained within the complaint.  If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts.  If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a

genuine dispute for trial, any factual assertions made in the Defendant's affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 28th day of December, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA