# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

KEIRON KENNETH HOLMES,      )
SR.,                        )
                            )
            Plaintiff,      )
                            )
v.                          )           CV422-227
                            )
SGT. BAXTER, *et al.*,        )
                            )
            Defendants.     )

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se*, filed this 42 U.S.C. § 1983 lawsuit while housed at the Chatham County Detention Center as a pretrial detainee. *See* doc. 1 at 6-8.  Plaintiff's Complaint was previously screened pursuant to 28 U.S.C. § 1915A.  *See* doc. 19, *adopted by* doc. 41.  While many of Holmes' claims were dismissed, *see* doc. 41, the Court found that Plaintiff had stated a claim for excessive force against Baxter, Willis, Fisher, and Gardner.  *See* doc. 19 at 7-8.  Those defendants waived service, docs. 25-28, and filed their Answer on February 28, 2023, doc. 32.

## I.   Background and Procedural History

The details of Holmes' sole pending claim were described in this Court's prior Order.  *See* doc. 19 at 7 (quoting doc. 1 at 6).  Briefly, Holmes

alleges that during booking an officer placed a knee into his back while he was "non-resistant," and that, without provocation, he was "boxed" in the head. Doc. 1 at 6. Throughout this case's pendency Holmes has filed excessive and sometimes frivolous papers on the docket. *See generally*, docket (reflecting Holmes' filing of nine motions for summary judgment.) Many of the filings were duplicative or sought no relief, and the Court consequently directed the Clerk to terminate them. He was warned that "further filing of frivolous motions for summary judgment would not be tolerated." Doc. 115 at 23. After the Order and Report and Recommendation was docketed, Holmes filed two more Motions for Summary Judgment, docs. 116 & 121, as well as a "Motion for disposition on defendants," doc. 123, a Motion for Documents, doc. 125, and a Motion for Informal Discovery Dispute Conference, doc. 129. Those motions are discussed below.

As well, the District Judge recently adopted the undersigned's recommendation to deny Holmes' Motion for Summary Judgment, doc. 63, as well as his Motions for preliminary injunction, docs. 50 & 81. Doc. 130. The Court also dismissed Defendants' Motion to Dismiss and Motion to Seal, and the Court directed Defendants to refile their Motion for

Summary Judgment. *See* doc. 130 at 5 (denying doc. 101). The Court directed Holmes to respond to Defendants' renewed Motion for Summary Judgment, doc. 119, or to dispute his receipt of that Motion by sworn declaration by March 15, 2024. Doc. 130. Holmes was warned that failure to comply with court directive could result in his case being dismissed for failure to prosecute or failure to comply with court order. *Id.* at 4.

Holmes filed a "Response to Defendants Renewed Motion for Summary Judgment" on March 13. Doc. 131. Holmes' Response contains one paragraph which states that the "attached" documents are "more than enough evidence to prove" that the Defendants did not mail him a copy of the renewed motion for summary judgment. *Id.* He also alleges that the attachments show that Defendants have lied throughout the case and "do not deserve their renewed motion for summary judgment to be granted." *Id.*[1] There are no attachments to the filing, and it is unclear

---

[1] The Court specifically instructed Holmes to dispute delivery of documents only "through sworn declaration." Doc. 130 at 4. Moreover, Holmes was warned that "[i]f he fails to do so . . . his case may be dismissed for failure to . . . comply with [a] court order." *Id.* Holmes' Response does not dispute receipt via sworn declaration. *Cf.* 28 U.S.C. § 1746. Holmes' noncompliance with the Court's Order could justify dismissal pursuant to Federal Rule 41(b). *See, e.g., Brown v. Tallahassee Police Dept.*, 205 F. App'x 802, 802 (11th Cir. 2006) ("Dismissal pursuant to Rule 41(b) upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse

whether Holmes' intends to direct the Court to previously filed items or if the reference represents some error or confusion on his part. Besides those filings which the Court previously construed as responses, he has not otherwise substantively responded to the Defendants' renewed Motion for Summary Judgment, and he also does not dispute receipt of the Motion by sworn declaration, despite the Court's warning. However, he has filed a document entitled "Statement of Material Facts," doc. 127, which disputes the necessity of any use of force based on the disciplinary board finding, complains about missing camera footage, and again complains about not receiving now-defunct filings or papers which he has "demanded." Doc. 127 at 1-2. Defendants' Motion for Summary Judgment is due for resolution.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 56, motions for summary judgment are granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if . .

---

of discretion." (internal quotation marks and citation omitted)). However, since as explained below, Defendants' Motion for Summary Judgment should be granted, the possibility of an alternative dismissal pursuant to Rule 41(b) is moot.

. it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997); *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992)). The Court must view factual disputes in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor," *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. *Anderson*, 477 U.S. at 255. Additionally, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

The movants here, *i.e.*, the Defendants, do not bear the burden of proof at trial, and therefore may "satisfy [their] initial burden on

summary judgment in either of two ways." *McQueen v. Wells Fargo Home Mortg.*, 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993)). First, the movants "may simply show that there is an absence of evidence to support the [Plaintiff's] case on the particular issue at hand." *Id.* (citation omitted). Or second, movants may "provide affirmative *evidence* demonstrating that the [nonmovant] will be unable to prove its case at trial." *Id.* (citation omitted and alterations in original). If such a showing is made, the burden then shifts to Plaintiff to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). In this case, the Court is mindful of the obligation to liberally construe *pro se* pleadings, but "*pro se* litigants are required to comply with applicable procedural rules." *Ramchandani v. Sanghrajka*, 2022 WL 16549470, at *1 (11th Cir. Oct. 31, 2022) (citing *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007)). However, Defendants have met their burden by pursuing both avenues; they have shown that there is an absence of evidence to support Holmes' allegations and they have provided affirmative evidence demonstrating that Holmes will be unable to prove his case at trial. Thus, even if Holmes had thoroughly responded, he could not prevail on his claim.

## III.   Discussion

Defendants' renewed Motion for Summary Judgment asserts that the Defendants are entitled to qualified immunity because Holmes has failed to show that Defendants violated his clearly established constitutional rights.  Doc. 119-1 at 20-22.  Qualified immunity grants "complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  To establish the defense of qualified immunity, the burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority.  If, *and only if*, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law.  *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018).  Defendants effectively meet their burden in showing that they were acting within their discretionary authority.  Doc. 119-1 at 13-14.  They then dispute Holmes' assertions that they violated his constitutional rights.

Holmes burden to show that Defendants violated his constitutional rights is divided into a two-step inquiry. "First, the court must ask whether the plaintiff's allegations, if true, establish the violation of a constitutional or statutory right. If a constitutional or statutory right would have been violated under the plaintiff's version of the facts, the next step is to ask whether the right was clearly established." *Bogle v. McClure*, 332 F.3d 1347, 1355 (11th Cir. 2003) (citations omitted). The Court has discretion to analyze these two-steps in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011) (noting that "these two steps do not have to be analyzed sequentially; if the law was not clearly established, [a court] need not decide if the Defendants actually violated the Plaintiff's rights") (citing *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009)). Because Holmes fails to show that his rights were violated, the court need not proceed to the secondary question of whether the right was clearly established to hold that Defendants are entitled to qualified immunity.

A. *Defendants' Renewed Motion for Summary Judgment*

The Defendants argue that they did not violate Holmes' constitutional rights, and are therefore entitled to qualified immunity,

because they did not use excessive force. Relying on outdated law, Defendants argue that the "applicable standard for a Fourteenth Amendment and an Eighth Amendment violation is the same." Doc. 119-1 at 11 (citing *Williams v. Scott*, 433 F. App'x 801, 803 (11th Cir. 2011) (applying the Eighth Amendment standard when examining use of force against a civil committee and noting that Williams did not raise the issue of whether the district court erred in analyzing his excessive force claim based on Eighth Amendment and Fourteenth Amendment standards, and thus not reaching that issue), and *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)). *But see Kingsley v. Hendrickson*, 576 U.S. 389 (2015). They then assert that the force used was reasonable, that it did not result in the alleged heart attack injury, and that the decision to use force did not violate clearly established law. *Id.* With their Motion, Defendants provided body-worn camera footage to support their claim, and their legal arguments have not been rebutted by Holmes; he relies exclusively on his own factual assertions in any "response" he provides. However, because Holmes' most recent response appears to seek to incorporate prior filings, the Court considered all of his filings in search

of substantive response.  Docs. 104 at 1-2; 108; 131.  To the extent that such a response could be discerned, his arguments fail.

Although Defendants' Motion initially utilizes the incorrect standard, it appears to self-correct later in its brief to argue that Holmes failed to establish that the force used against him was "objectively unreasonable."  Doc. 119-1 at 12 (quoting *Kinglsey*, 576 U.S. at 397).  Indeed, to establish a claim for excessive force in the Fourteenth Amendment context, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97.  This standard differs from the one applicable to a convicted inmate.  *Id.* at 400-401 (holding that the Eighth Amendment's malicious-and-sadistic standard—which applies to incarcerated prisoners—does not extend to pretrial detainees.); *see also Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 952 (11th Cir. 2019) ("After *Kingsley*, then, if force used against a pretrial detainee is more severe than is necessary to subdue him or otherwise achieve a permissible governmental objective, it constitutes "punishment" and is therefore unconstitutional.").  "[T]he appropriate standard for a pretrial

detainee's excessive force claim is solely an objective one." *Kingsley*, 576 U.S. at 397.

Courts consider the following factors to determine the reasonableness or unreasonableness of the force used: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Kinglsey*, 576 U.S. at 397. While considering these factors, the Court is also cognizant that "[m]aintaining safety and order at [corrections facilities] requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012); *see also Ireland v. Prummell*, 53 F.4th 1274, 1299 (11th Cir. 2022).

Throughout this case, Holmes' arguments indicate confusion regarding the Court's order that he limit his claim to an excessive force claim against all Defendants, despite this Court's multiple clear orders regarding his tangential claims. *See* docs. 19, 30, 41, 115. His continued

confusion is apparent, as he argues that Defendants' brief in support of their motion should be "put away from evidence" because he was found not guilty of offenses charged.  Doc. 104 at 8.  Holmes' also relies solely upon the CCDC's polices and procedures, quoting extensively from the guidelines to claim he is entitled to summary judgment of his constitutional claim and not Defendants.  *See, e.g.*, doc. 108-2.

In what the Court construes as his "responses," Holmes disputes the Defendants' statement of material facts.  Docs. 104 at 1-2; 108; 131. He complains that the evidence used by the Defendants to justify the use of force "clearly shows" he is "not guilty for what defendants stated [he] did" in resisting the initial orders of defendants.  Doc. 104 at 2; *see also* doc. 108 (claiming that Defendants admitted Holmes complied with initial orders and further orders to face wall, and that he was therefore cooperative and undeserving of use of force).  He claims, without any discernable basis, that Defendants tampered with the video evidence which would otherwise prove his innocence.  He disputes Defendants' claim that he refused to cooperate, pointing to the medical records which he argues indicate he was cooperative.  Doc. 104 at 2.  He makes a new claim of insufficient medical care, *id.* at 3, and, though he does not

identify what is missing, he claims he has not received "all" of his medical records from the Defendants, *id.* He reiterates that he is frustrated that certain attachments were not included in what he was sent, *id.*, and complains that the records are inconsistent regarding his age, and thus are unreliable, *id.* at 4. Next, Holmes claims that Defendants' argument that he did not have a heart attack is faulty because the ultrasounds of his heart were not sent to all parties. *Id.* at 4. He references his deposition, which suggests he did receive it, *id.* at 5, and he also relies on it to prove that the Defendants' affidavits are untrue. Finally, as noted, he bases his argument against summary judgment on the allegation that the Defendants have "proven themselves to be 'compositive' [sic] liars see all doc. filed by all parties." Doc. 131.

In other words, Holmes attempts to avoid summary judgment by disputing facts, but his assertions are either conclusory or are immediately contradicted by the record. First, the Court has reviewed body-worn camera footage taken immediately after the altercation. *See* docs. 119-3 at 2, 119-4 at 2. It shows a distressed but largely unharmed Holmes behaving belligerently, threatening to kill officers, and being prudently managed by prison staff who immediately sought medical care

for him.  While the footage is not necessarily helpful as to the specifics of the impetus for the force used, it clearly shows Holmes was noncompliant and uncooperative, unlike his attestations to the contrary.  Therefore, his claims in his deposition and elsewhere that he was fully cooperative indicate a dissonance with reality.  *See* doc. 119-6 at 22 (When shown the footage where he resists and threatens officers, stating, "[t]hat's me not resisting, as you can see."); *see also* doc. 104 at 2 (claiming medical records prove he was cooperative); *but see* doc. 119-5 at 7 (medical record stating that "inmate became agitated when talking, cursing, slampping [sic] in door and stated 'I will kill you all'"); and *id.* at 8 ("he stated that he was . . .resisting a little" and that he "understood why they slammed him on the ground.").  Moreover, during his deposition, when asked specific questions about his heart condition and the damage purportedly caused by the use of force, Holmes responds that he is not sure or that he was involved in an altercation with the cardiologist; he never answers the question.  Doc. 119-6 at 8.  Ultimately, there does not appear to be any *genuine* issue of material fact, as most of the things disputed by Holmes are tangential to whether the officers violated Holmes' constitutional rights.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Nevertheless, the Court is  mindful of the fact that the video does not show the altercation leading to Holmes' complaint.  In *Brooks v. Miller*, 78 F.4th 1267, 1282 (11th Cir. 2023), the Eleventh Circuit recently analyzed body-worn video evidence which failed to show the altercation giving rise to the claim but showed events immediately before and after.  There, an officer arrested the plaintiff for the misdemeanor crime of driving without a license, and during the arrest, the officer allegedly used excessive force.  *Id.*  Applying Fourth Amendment protections, the Court found that the crime mandating the arrest failed to rise to the level of "criminal conduct that should have required the use of force," and also that "no evidence so much as suggests that [the plaintiff] posed any threat" to the officer.  *Id.* at 1283 (quoting *Stephens v. DeGiovanni*, 852 F.3d 1298, 1322 (11th Cir. 2017)).  Noting the fact that the video did not "blatantly contradict" the plaintiff's version of events, and that precedent provided clear guidance to the officer that

slamming a person into a car during an arrest for a minor offense "when the suspect does not endanger anyone else, does not resist, and does not attempt to escape," constitutes excessive force, the Court found that a genuine issue of material fact precluded summary judgment. *Id.* (alterations omitted).

The present case is easily distinguishable. First, although Holmes, a pretrial detainee, is protected under the same rubric as the plaintiff in *Brooks* (an arrestee), the factors carry different weights. First, in examining "the relationship between the need for the use of force and the amount of force used," "[o]bviously, legitimate interests — including the need to preserve internal order and discipline and maintain institutional security — may at times require jail officers to use force." *Piazza*, 923 F.3d at 953 (internal citations and quotations omitted). Additionally, even accepting Holmes' description of events as true — that he was compliant and did not assault the officer, but that he was "boxed" and pushed to the ground and subdued anyway — there is indication of only a *de minimis* imposition of force. *See Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1303 (11th Cir. 2023) (closed fist strikes during struggle not excessive force). In other words, the severity and duration of his

subjection to the force was negligible.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."); *Crocker v. Beatty*, 995 F.3d 1232, 1251 (11th Cir. 2021) ("In the Fourteenth Amendment context . . . '[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'"); *but see Patel v. Lanier Cnty. Georgia*, 969 F.3d 1173, 1183 (11th Cir. 2020) (where plaintiff was placed in hot transport van for two hours jury question arose as to severity and duration.).

Second, as to the extent of the injury, the video and medical records indicate no injury whatsoever, despite Holmes' allegations that he had a heart attack.  Third, the video also proves that the officers made efforts to temper or limit the amount of force when they sought nurse assistance during the altercation.  *Kingsley*, 576 U.S. at 397.  The video clearly shows the officials attempting to secure medical assistance for Holmes, who was noncompliant when the nurse attempted to assess his condition.  *See* docs. 119-3, 4.  Fourth, although Holmes attempts to create a factual dispute as to the security problem at issue by claiming he was "innocent" of the accusations of being uncooperative, medical records indicate that

17

Holmes previously admitted to resisting direct orders from the officers. Thus, Holmes' own admissions, as reflected in the record, conflict with Holmes' recitation of events.  Doc. 119-5 at 8.  Moreover, the video belies any intimation of a cooperative detainee.

Most significantly, the Court finds that the two remaining factors are clearly proven by the video footage.  Holmes repeatedly threatened to kill the officers, and he actively resisted for several minutes after the incident.  He was consistently belligerent until he was placed in a cell. According to the medical records, he continued to threaten staff even after that.  Doc. 119-5 at 7 (contemporaneous medical note taken at 4:48 PM, hours after the incident, reporting Holmes' continued death threats). Therefore, even though the video does not show the initial use of force, this case is unlike *Brooks*, because the video does prove multiple issues pertinent to determining whether the force was excessive: (1) the need for force appears to have been necessary, based on Holmes' agitated state in the prison setting; (2) the damage inflicted by the force was not excessive — Holmes does not appear to be harmed; and (3) Holmes's recitation of events is clearly untrue; he continued to resist and threaten officers.  A plaintiff "may not rest upon the mere allegations or denials of

his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Finally, to the extent Holmes argues that certain facts were "unavailable" to him which allow him to properly dispute the Defendant's Motion, the Court has been cognizant of the federal rules. *See* Fed. R. Civ. P. 56(d). Pursuant to Rule 56(d), the Court has in vain deferred considering the Defendants' Motion for Summary Judgment pending Holmes' sworn attestation of nonreceipt, *see* Fed. R. Civ. P. 56(d)(1), and, given the longevity of this case, Holmes has had extra time to obtain affidavits which would controvert the movant's arguments, Fed. R. Civ. P. 56(d)(2). The Court has been generally conscientious of the *pro se* prisoner's difficulty in pursuing his case. However, though Holmes continues to dispute receipt of documents, see doc. 125, the Defendants' Motion has clear merit. Simply, Holmes' case fails because the Court finds that, as to the legal issues in play, the record clearly contradicts Holmes' assertions and shows that Defendants did not violate Holmes' constitutional rights. As to any other allegation not specifically refuted by the record, Holmes states no more than a *de minimis* claim, or he attempts to controvert Defendants' arguments with irrelevant and trivial

disagreement on the facts, and therefore, the Defendants are entitled to summary judgment. Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED**.

### B. Holmes' Miscellaneous Motions

Holmes filed several miscellaneous motions which remain on the docket as well. First, Holmes' two Motions for Summary Judgment are due for dismissal. The first of these, Holmes' eighth Motion for Summary Judgment, was signed January 17, 2024, and the Court received and filed it on February 6, 2024. Therefore, the Court assumes he had not received the Court's February 5, 2024 directive regarding his frivolous motions for summary judgment. *See* doc. 115 at 23 ("such motions will be summarily terminated if they continue to seek relief based upon moot issues, meritless and previously asserted arguments, or irrelevant factual claims."). Nevertheless, the Motion is due to be denied because it seeks adjudication on the theory that "defendants gave false statements in [his] discovery and fail[ed] to comply with discovery." Doc. 116 at 1. To the extent he has reasserted his spoliation argument, the Court has already dispelled this claim. Doc. 130 at 5. Otherwise, Holmes is simply not entitled to indefinite discovery, and Defendants' alleged failure to comply

with his out of time demands does not warrant summary adjudication. His claim that Defendants have "admitted to withholding evidence" is simply untrue.  It is clear that Defendants have admitted no such thing. Holmes has not met any summary judgment burden, and his Motion should be **DENIED**, doc. 116.

Holmes' ninth Motion for Summary Judgment, doc. 121, is also due for dismissal.  Again, it appears Holmes still had not received the Court's directive that he may not continue to file frivolous Motions for Summary Judgment when he drafted this Motion.  *See* doc. 121 at 4 (signed February 1, 2024).  However, he yet again argued that Defendants have not complied with his discovery requests or that he has not received certain documents, and — though he still does not identify supposed falsehoods — he claims that Defendants have lied.  He complains about missing camera footage which he alleges would show his lack of receipt of mail and therefore prove his claims are true.  Holmes' motion should be **DENIED** because it is duplicative and it fails to seek summary adjudication on any avenue available under the federal rules of procedure.[2]  Fed. R. Civ. P. 56 ("The court shall grant summary judgment

---

[2] As with all of his Motions, to the extent Holmes seeks dismissal as a sanction for

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

Next, Holmes filed a "Motion for Disposition on Defendants," doc. 123. Given Holmes' previous requests for and references to "dispositions" which have clearly sought *depositions*, the Court construes Holmes request as a motion to compel discovery. It is nonetheless procedurally deficient and due to be denied. A party moving for an order compelling discovery must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to make discovery. Fed. R. Civ. P. 37(a)(1). Holmes has not complied with this directive. Next, Holmes' motion is untimely. *See* doc. 33; *see Hinson v. Clinch Cnty., Georgia Bd. of Educ.*, 231 F.3d 821, 826 (11th Cir. 2000) (holding that court did not "abuse its discretion in denying . . . [a] motion to compel production due to . . . delay in bringing the motion."). Holmes' Motion neither explains his delay nor substantiates Court intervention. Therefore, it is **DENIED**, doc. 123.

---

the Defendants' supposed failures to participate in discovery, he has failed to support this claim by identifying specific instances of sanctionable behavior or even show that he has *properly* sought discovery. Fed. R. Civ. P. 37 (contemplating sanctions when a party "fails to provide information" as required by Rule 26(a) or (e)" or fails to attend deposition but requiring certification of attempts to confer prior.)

Likewise, Holmes' "Demand for Documents" which appears to have been filed simultaneous to his "Response to the Defendants Motion for Summary Judgment," doc. 125, disputes his receipt of Defendants' first Motion to Seal and for Summary Judgment, docs. 70 & 72.  The Court already addressed this issue for Holmes by requiring the Defendants to refile a renewed Motion, *see* doc. 115 at 23.  Moreover, his request for documents "70, doc. 72, better yet again I ask for documents #1 through #115 and/or an updated case summary from the defendants sent/filed documents with the courts," is flatly improper.  The items filed on this docket are public record and have not been hidden from Holmes.  Similarly, the Defendants' have renewed their Motion and purport to have served it upon him.  He has not disputed their certificate of service in accordance with Court order.  Additionally, Holmes may request from the Clerk copies in paper form at $.50 per page.   His Motion for Documents is **DENIED**, doc. 125.  Finally, *pro se* prisoners are not entitled to informal discovery conferences under the undersigned's standard procedures, and though the Court retains discretion to apply the informal discovery conference procedures, it finds no reason to do so here given the resolution due in this matter.  Therefore, Holmes' request

23

for informal discovery conference is **DENIED**, doc. 129.

## IV.   Conclusion

The Court **RECOMMENDS** that Defendants renewed Motion for Summary Judgment be **GRANTED**, doc. 119, and that Plaintiff Holmes' two remaining Motions for Summary Judgment be **DENIED**, 116, 121. Holmes' remaining miscellaneous discovery motions stand **DENIED**, docs. 123, 125, 129.

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are

advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED and REPORTED and RECOMMENDED,** this 22nd day of March, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA